IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDGERLY,<br><br>        Plaintiff,<br><br>   v.<br><br>CITY AND COUNTY OF SAN FRANCISCO ET AL.,<br><br>        Defendants. | No. C 03-02169 CRB<br><br>**ORDER DENYING MOTION FOR JUDGMENT UNDER RULE 50(c) AND MOTION FOR A NEW TRIAL** |

Plaintiff Erris Edgerly moves for judgment as a matter of law and for a new trial following a two day civil trial which resulted in a jury verdict for the Defendants.[1] For the reasons explained below, the Court denies both motions.

**I.    BACKGROUND**

In 2000, Edgerly was standing by himself inside a playground at the Martin Luther King/Marcus Garvey Housing Cooperative in San Francisco, where he was not a resident. The Cooperative was in an area of extensive drug and gang activity, and the playground in particular was a drug hot spot. The playground was surrounded by a fence and had "No Trespassing" signs posted at every entrance. Two undercover officers, John Conefrey and David Goff, drove by and recognized Edgerly. They knew that he did not live at the Cooperative, that he was an associate of a neighborhood gang, and that he had been arrested

---

[1] He has not timely filed a Reply brief in support of his Motion.

nearby for possession of drugs, possession of drugs for sale, and other offenses. The officers drove around the block, then returned a few minutes later and saw Edgerly standing in the same place. They approached Edgerly, determined that he had no specific reason to be there, and arrested him for trespassing. The officers conducted a pat-down search, then transferred Edgerly to the Park Police Station, where they performed an additional search. Edgerly was cited and released.

Edgerly filed suit against the officers, a police sergeant, and the City and County of San Francisco ("the City"), seeking damages under section 1983 based on unlawful arrest and search under the Fourth Amendment, and also raising state law claims for negligence, negligent and intentional infliction of emotional distress, false arrest and unlawful search. Edgerly v. City & Cty. of San Francisco, 599 F.3d 946, 950 (9th Cir. 2010) ("Edgerly II"). The Honorable William H. Alsup granted summary judgment for the defendants on Edgerly's section 1983 claims against the City and all claims against the police sergeant. Id. A first trial was held. At the close of evidence, Judge Alsup granted the defendants' motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), disposing of Edgerly's remaining claims, awarding fees to the sergeant, and imposing sanctions on Edgerly and his attorney. Id. at 951.

Edgerly appealed. Initially, the Ninth Circuit reversed portions of the district court's grant of summary judgment and judgment as a matter of law. See Edgerly v. City & Cty. of San Francisco, 495 F.3d 645 (2007) ("Edgerly I"). Defendants successfully sought rehearing, however, and the Ninth Circuit withdrew the Edgerly I opinion. See 527 F.3d 841 (2008). In 2010, the Ninth Circuit altered a number of its holdings from Edgerly I and remanded the case to this Court for retrial. See Edgerly II, 599 F.3d at 963.

This Court requested, and the parties provided, detailed briefing as to which issues remained in the case upon remand. See dkt. 252, 253, 255. Based upon the parties' briefing and the Court's own reading of Edgerly II, the Court narrowed the retrial's scope as compared to the initial trial. In February 2011, over ten years after the incident at issue, this

2

Court conducted a retrial. Trial lasted for two days, at the conclusion of which the Court presented the jury with a special verdict form. That form asked the jurors:

1. Given what you find the officers knew, did they transfer Mr. Edgerly to the station to determine whether Mr. Edgerly had any: (a) outstanding warrants; (b) stay-away orders, holds, admonishments, or other restrictions?

2. Given what you find the officers knew, did they believe that there was a reasonable likelihood that Mr. Edgerly's trespass offense would continue or resume if the officers did not transport him from the scene of the arrest?

3. Given what you find the officers knew, was it reasonable for them to believe that the safety of persons (including Officers Goff and Conefrey, Mr. Edgerly, or anyone else) would be imminently endangered by the release of Mr. Edgerly at the scene of the arrest?

4. Do you find that the officers conducted a search that required Mr. Edgerly to remove or arrange some or all of his clothing so as to permit a visual inspection of his boxer shorts, buttocks, or genitalia?

See dkt. 302.[2] The jury answered "YES" for each of the first three questions,[3] and "NO" for the fourth, thus finding in Defendants' favor on each question. Id. Defendants moved for judgment as a matter of law on Edgerly's claim for intentional infliction of emotional distress, and the Court granted the Motion. See dkt. 303. Defendant then brought these motions. See dkt. 310. Shortly thereafter, the Court entered judgment for Defendants on all pending claims. See dkt. 311.

## II. DISCUSSION

### A. Motion for Judgment as a Matter of Law

Edgerly argues that he is entitled to judgment as a matter of law on two grounds: first, as to the unlawful arrest claim, because Edgerly II ruled that "the officers unlawfully took plaintiff into custody," and second, as to the unlawful search claim, because "the defendants did not indicated [sic] that they had a reasonable suspicion that plaintiff was carrying contraband on his person." See dkt. 310 at 1-2. The Court disagrees as to both grounds.

---

[2] The form also asked, only if Question 4 was answered in the affirmative, whether "the officers [had] a reasonable suspicion based on articulable facts to believe that Mr. Edgerly was concealing a weapon or contraband, and that such a search would result in the discovery of the weapon or contraband." Id. The jury did not reach this fifth question as it did not answer Question 4 in the affirmative. Id.

[3] Question 1 was presented to the jury in two parts, and it answered "YES" to both. Id.

3

### 1. Unlawful Arrest

Edgerly is correct that the Edgerly II opinion addressed his state law unlawful arrest claim, but incorrect in suggesting that this Court disregarded the Ninth Circuit's mandate.[4] Edgerly I entered judgment for Edgerly on the state law unlawful arrest claim. See Edgerly I, 495 F.3d at 654. But Edgerly II "reverse[d] and remand[ed] for further proceedings on this state law claim." 599 F.3d at 959. Although Edgerly II stated that "the custodial arrest was not authorized by state law," id., this Court did not understand the Ninth Circuit to have found in Edgerly's favor on his state law unlawful arrest claim, for two reasons.

First, had the Ninth Circuit intended to find in Edgerly's favor on his state law unlawful arrest claim, it could have simply upheld Edgerly I. See Edgerly I, 495 F.3d at 654 (entering judgment for Edgerly on this claim). Instead, it found that the officers did, in fact, have probable cause for arrest, and it remanded the claim to this Court for "further proceedings." See Edgerly II, 599 F.3d at 955, 959. A remand for further proceedings indicated that the Ninth Circuit believed that there was more to do. Cf. Stevens v. F/V Bonnie Doon, 731 F.2d 1433, 1435 (9th Cir. 1984) (on remand for further proceedings, trial court is to proceed in accordance with mandate from appellate court, which controls "as to all matters within its compass, but leaves to the district court any issue not expressly or impliedly disposed of on appeal").

Second, there was indeed more to do. Edgerly II found that there was probable cause to believe that Edgerly was committing trespass in violation of California Penal Code section 602.8. 599 F.3d at 959. But the court went on to note that section 602.8 "is punishable only as an infraction," and reasoned that under California Penal Code section 853.5(a), "'[i]n all cases . . . in which a person is arrested for an infraction,' custodial arrest is authorized '[o]nly if the arrestee refuses to sign a written promise [to appear], has no satisfactory identification,

---

[4] Edgerly argued this point explicitly to the Ninth Circuit in a writ of mandamus filed on the eve of retrial. He urged that "the District Court has failed to follow the mandate of the United States Court of Appeal for the Ninth Circuit" and warned that "the second jury trial is not in compliance with the Ninth Circuit opinion." See Petition for Writ of Mandamus at 5, 12, In re Erris Edgerly, case no. 11-70394, dkt. 1-1. The Ninth Circuit held that Edgerly had "not demonstrated that this case warrants the intervention of this court." Order, In re Erris Edgerly, case no. 11-70394, dkt. 2.

4

1 or refuses to provide a thumbprint or fingerprint.'" Id. (citing Cal. Penal Code § 853.5).
2 Indisputably, as the Ninth Circuit found, none of the three exceptions contained within
3 section 853.5 applied to Edgerly. See id. However, Edgerly II did not discuss the additional
4 exceptions that section 853.5 incorporates from section 853.6. The first line of section 853.5
5 states: "[e]xcept as otherwise provided by law, in any case in which a person is arrested for
6 an offense declared to be an infraction, the person may be released according to the
7 procedures set forth by this chapter for the release of persons arrested for an offense declared
8 to be a misdemeanor."

The procedures pertaining to people arrested for misdemeanors are contained in California Penal Code section 853.6. That section provides in part:

> Whenever any person is arrested by a peace officer for a misdemeanor, that person shall be released according to the procedures set forth by this chapter unless one of the following is a reason for nonrelease . . .
> (1) The person was so intoxicated that he or she could have been a danger to himself or herself or to others.
> (2) The person arrested required medical examination or medical care or was otherwise unable to care for his or her own safety.
> (3) The person was arrested under one or more of the circumstances listed in Sections 40302 and 40303 of the Vehicle Code.
> (4) There were one of more outstanding warrants for the person.
> (5) The person could not provide satisfactory evidence of personal identification.
> (6) The prosecution of the offense or offenses for which the person was arrested, or the prosecution of any other offense or offenses, would be jeopardized by immediate release of the persons arrested.
> (7) There was a reasonable likelihood that the offense or offenses would continue or resume, or that the safety of persons or property would be imminently endangered by release of the person arrested.
> (8) The person arrested demanded to be taken before a magistrate or refused to sign the notice to appear.
> (9) There is a reason to believe that the person would not appear at the time and place specified in the notice. The basis for this determination shall be specifically stated.
> (10) The person was subject to Section 1270.1.

Cal. Penal Code § 853.6(i).

Defendants argued, and the Court agreed, that these ten exceptions from section 853.6 are incorporated into section 853.5. See dkt. 252 at 7-8. This is not a novel view. See People v. Arnold, 58 Cal. App. 3d Supp. 1, 5 n.2 (1976) ("Section 853.6 provides a citation procedure under which persons arrested for misdemeanors may be released. Section 853.5 of the Penal Code makes the same procedures applicable to those arrested for infraction offenses."); see also California Criminal Procedure § 3:58 (2010-11 ed.) ("A

5

citation procedure for misdemeanors is set forth in Penal Code §§ 853.6 et seq. The procedure applies to: . . . Infractions."). However, it is not a view that was presented to the Ninth Circuit.

The issue of an improper cite and release was not adjudicated in the initial trial. It was not in Edgerly's complaint and was not referenced in the final pretrial order as an "issue [to] be tried." See Lewis Decl. Ex. A. Defendants represent to the Court, and Edgerly does not dispute, that this issue was raised for the first time on appeal. See dkt. 329 at 7. Even then, section 853.6 appears never to have been raised before the Ninth Circuit, and section 853.5 was mentioned only in a parenthetical. See Appellants' Opening Brief at 24, Edgerly v. City & County of San Francisco, Nos. 05-15080, 05-15382, 2005 WL 4121344 (9th Cir. Nov. 17, 2005) ("(In addition, under penal code § 602.8, the plaintiff would not be subject to custodial arrest. Instead, the officers could only request his name and have him sign a promise to appear. Penal Code section 853.5)").

In light of the Ninth Circuit's remand for further proceedings, the Court's understanding that the exceptions listed in section 853.6(i) are incorporated into section 853.5, and the evidence of those exceptions never having been introduced during the first trial or discussed in full on appeal, the Court allowed Defendants to introduce such evidence in the retrial.[5] The Court continues to believe that it was proper to do so, and that Edgerly is not entitled to the entry of judgment on this claim.

### 2. Unlawful Search

Nor is Edgerly entitled to entry of judgment as to the unlawful search claim based on testimony in the first trial that "the defendants did not indicated [sic] that they had a reasonable suspicion that plaintiff was carrying contraband on his person." See dkt. 310 at 1-2. Edgerly seems to be arguing that, in the absence of testimony that the officers believed Edgerly had contraband, "a partial judgment should be entered for the plaintiff as to the lack of reasonable suspicion to perform a strip search." Id. at 2. This argument is flawed.

---

[5] Although Defendants argued that four of the ten section 853.6(i) exceptions applied, the Court permitted Defendants to proceed as to only the three for which there appeared to be evidentiary support. Compare dkt. 252 (Defendants' brief) at 7-8 with dkt. 302 (verdict form).

6

Most important, Edgerly's argument presupposes that there was a strip search. While Edgerly has always maintained that the search at the station was a strip search, Defendants have always maintained that it was "a routine clothing search." See Edgerly II, 599 F.3d at 952 (noting "conflicting evidence"). This issue was not resolved in Edgerly II: that court found that "a dispute of fact exists, and a reasonable jury could find that the Officers strip searched Edgerly," not that a strip search had occurred. See 599 F.3d at 958; see also id. at 960 ("Viewing the evidence in the light most favorable to Edgerly, a reasonable jury could find that the Officers strip searched him"). Whether the search was indeed a strip search was a threshold question for the jury on retrial; only if they found in the affirmative were they to determine whether the officers had reasonable suspicion that Edgerly was concealing a weapon or contraband. See dkt. 302 (verdict form, Question 5). Because the jury found that there was no strip search, they never reached the verdict form's question about reasonable suspicion. Even if Edgerly is correct that there was no testimony supporting reasonable suspicion, this would not entitle him to entry of judgment on the unlawful search claim.

Additionally, there was testimony in the initial trial that Officer Conefrey suspected that Edgerly was "waiting to do narcotics sales." Lewis Decl. Ex. C at 175:8-15. Logically, an officer who suspects that someone is waiting to do narcotics sales might well suspect that that person has contraband – this issue was in dispute. In the retrial, there was extensive testimony from the officers about contraband. See, e.g., dkt. 326 (Tr. of Feb. 8., 2011) at 177:16-22 (describing search of Edgerly at station as "a systematic search for weapons or contraband"), dkt. 327 (Tr. of Feb. 9, 2011) at 217:8-218:21 (describing search of Edgerly at station as one looking for "contraband and/or weapons"). Edgerly was free to cross-examine the officers with their testimony in the initial trial to the extent that the two were inconsistent. But he is incorrect in concluding that the testimony warrants the entry of judgment in his favor.

### 3. Conclusion as to Motion for Judgment as a Matter of Law

For the foregoing reasons, Edgerly is not entitled to judgment as a matter of law on either the unlawful arrest claim or the unlawful search claim. This Motion is DENIED.

7

### B. Motion for a New Trial

Edgerly next moves for a new trial, alleging misconduct by the Defendants' counsel and numerous errors by the Court. See dkt. 310 at 3-8. Federal Rule of Civil Procedure 59(a) provides that a new trial is warranted "for any reason for which a new trial has heretofore been granted in an action at law in federal court." The Ninth Circuit has held that "[t]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 510 n.15 (9th Cir. 2000). Edgerly has not met this standard as to either opposing counsel's or the Court's actions, as described below.

#### 1. Attorney Misconduct

Edgerly argues that defense counsel twice engaged in misconduct. See dkt. 310 at 4.

##### a. Questions on Cross-Examination

The first incident Edgerly complains of is defense counsel's asking Edgerly during his cross-examination whether he had "talked with his attorney. . . . implying that plaintiff [sic] attorney had plaintiff change his testimony." Id.[6] Indeed, a review of the transcript shows that defense counsel subjected Edgerly to an aggressive series of questions testing Edgerly's account of the search at the station. See dkt. 327 (Tr. of Feb. 9. 2011) at 273:9-274:3 (Q: "Because I asked you before whether you are [sic] hands ever left the counter. You said no. Now you are saying they actually did leave the counter? A: Yes. . . . Q: Are you just making that up to help your case? A: No. Q: You sure? A: I'm sure."). Those questions culminated in defense counsel asking Edgerly, "Did you have a conversation with your lawyer at any point in time before these proceedings to create a story about your pants?" Id. at 273:24-274:1. The Court sustained Edgerly's counsel's objection to that question. Id. at 274:2-3. Shortly thereafter, following the read-back of Edgerly's earlier testimony, defense counsel

---

[6] Edgerly does not quote or cite to any of the specific questions or statements by counsel, or the actions of the Court, of which he now complains. Although his Motion (dkt. 310) was filed before the trial transcripts were finalized, see dkt. 326, 327, he has not supplemented the Motion since they have become available. The Court has made its best effort to search out Edgerly's references in the transcripts.

8

asked Edgerly, "Did you spend some time with your lawyer talking about what your testimony would be here today regarding the boxers?" Id. at 275:11-13. Edgerly's counsel again objected and the Court responded, "I don't think you can go into the content of the discussion between himself and his lawyer." Id. at 275:14-18.

Neither question led to the breach of the attorney-client privilege. Edgerly did not answer either question. Edgerly cites to no authority in support of the notion that two such questions, to which no answer was given, justify a new trial.[7] Although defense counsel should not have asked about the content of Edgerly's communications with his counsel, such is the basis for an evidentiary objection, not a new trial.

### b.     Closing Argument

The second incident Edgerly complains of is defense counsel stating during closing arguments that he was surprised that Edgerly did not hire an expert. See Dkt. 310 at 4. Defense counsel said:

> And, you know, I was surprised when Plaintiff rested and didn't call an expert. That should be very telling to you, that there was nobody testifying on behalf of Plaintiff that, one, contradicted anything that any of the officers said. But two, he did not even bring an expert in to tell you that there was anything improper about this arrest. All right?
>
> He, Plaintiff, did not bring an expert in to tell you – give you an opinion that there was anything improper about this arrest, and I guarantee you with the stakes as high as they are in a big federal courthouse with a federal judge and a jury, as I pointed out before, if you are going to make a case that an arrest was improper, you would hire, you would spend the 390 bucks to bring in to tell the jury why it was improper. You know what? You did not get that from the Plaintiff. There is no testimony that contradicts Don Cameron's testimony. There's no evidence that contradicts it. Please keep that in mind when you are deliberating.

Id. at 398:14-399:5. Edgerly does not cite to any authority holding that defense counsel is not permitted to comment on a plaintiff's failure to retain an expert. Indeed, even in criminal cases, it appears that the prosecution is permitted to comment on the failure of the defense to call expert witnesses. See Merced v. McGrath, 157 Fed. Appx. 7, 9 (9th Cir. 2005); Ignacio v. People of Territory of Guam, 413 F.2d 513, 521 (9th Cir. 1969). If such commentary is

---

[7] For this reason, the Court need not even address Defendants' additional argument that the questions were reasonable in light of the crime-fraud exception. See dkt. 329 at 16.

9

permissible in a criminal setting, it is certainly permissible in a civil setting, where the defense comments on the plaintiff's failure to introduce evidence.

Edgerly argues, however, that "the court had ruled that the expert would not be allowed to testify, but granted the defense counsel [sic] request to allow the expert and an officer after plaintiff closed its case in chief." See dkt. 310 at 4. Edgerly cites to nothing in the record confirming his recollection of this ruling, and the Court does not believe that his recollection is accurate. The Court never definitively ruled that either Cameron or any other expert could not testify. As Defendants note, defense expert Cameron had testified at the initial trial and was on the Defendants' witness list. See dkt. 329 (Opposition brief) at 19; dkt. 259 (Defendants' witness list) at 3 (listing Cameron). Edgerly was on notice that Defendants intended to call Cameron, and at no point designated his own expert. Defense counsel's commentary on Edgerly's failure to call his own expert was not misconduct.

### c.  Conclusion as to Attorney Misconduct

Edgerly has not demonstrated either that there was attorney misconduct or that, even if there was, such conduct was so prejudicial as to warrant a new trial. See Kehr v. Smith Barney, 736 F.2d 1283, 1286 (9th Cir. 1994) ("To warrant reversal on grounds of attorney misconduct, the 'flavor of misconduct must sufficiently permeate an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict'").

### 2.  Errors by the Court

Edgerly also points to numerous errors allegedly made by the Court that, he argues, merit a new trial. These arguments are also unpersuasive.

### a.  Not Excusing a Juror

Edgerly asserts, "Plaintiff had objected to a juror for cause. Said juror said he would require plaintiff to produce more evidence than defendant in this matter. The juror noted that he had several friends who were San Francisco Police Officers." See dkt. 310 at 3. This is the extent of Edgerly's argument on this point, and he provides no further detail as to the juror's identity, or the specific answers the juror gave in response to questions from counsel

10

1   and from the Court. Nonetheless, the Court recalls a juror who had initially expressed
2   statements along the lines of what Edgerly now recites. That juror was subsequently
3   rehabilitated. See Image Technical Servs., Inc. v. Eastman Kodak Co., 125 F.3d 1195, 1120
4   (9th Cir. 1997) ("A juror's initial impressions or initial bias may be irrelevant, at the trial
5   judge's discretion, when that juror commits to lay aside those feelings and reach a verdict
6   based on the evidence presented and the court's instructions"). Moreover, although ten
7   jurors were excused for cause, see dkt. 308 (Trial Log) at 1, Edgerly made no motions at the
8   conclusion of jury selection concerning the Court's failure to excuse this juror. A new trial is
9   not warranted on this ground.

### b.     Permitting Evidence of the Officers' Knowledge of Prior Arrests

Edgerly also complains that "[t]he court improperly allowed evidence of what the officers' knowledge [sic] of the plaintiff's prior arrests into evidence," because Edgerly II had already resolved the unlawful arrest claim. See dkt. 310 at 3. He adds: "the evidence did not address the issue of the strip search, as the officers['] testimony clearly indicated that there was no reasonable suspicion to believe that plaintiff had contraband on his person, as the Ninth Circuit had previously held." Id. These are the same arguments Edgerly makes in his Motion for Judgment under Rule 50(c). For the same reasons the Court rejected them in that Motion, it rejects them in this one.

### c.     Refusing to Allow Rebuttal

Edgerly argues next that he told the jury in his closing arguments that he would give a rebuttal, and that the Court's subsequent refusal to let him do so warrants a new trial. Id. at 4-5. But even Edgerly concedes that the "right to rebuttal is not absolute and is not a cause for appeal." Id. at 5. Indeed. District courts are given wide discretion in managing trials, and their decisions on such matters are reviewed for an abuse of discretion. See General Signal Corp. v. MCI Telecomm. Corp., 66 F.3d 1500, 1507 (9th Cir. 1995). Whether to permit rebuttal arguments during closing is a matter of trial management that is left to the court's "sound discretion." See Fernandez v. Corporacion Insular de Seguros, 79 F.3d 207, 209-10 (1st Cir. 1996) (collecting cases); see also Rutter Group Prac. Guide Fed. Civ. Trials

11

1 & Ev. Ch. 14-A 2(e). The Court exercised its discretion in refusing to let either side present
2 rebuttal.[8]

3 That exercise of discretion made particular sense in light of the Court's determination
4 that Edgerly bore the burden of proof as to his claims, and Defendants bore the burden of
5 proof as to the exceptions they argued applied to the cite and release statute. See Lewis Decl.
6 Ex. D (Feb. 9, 2011 Transcript) at 347-51, 401; see also dkt. 302 (verdict form setting forth
7 which side bore the burden of proof as to which questions). "It is customary for the party
8 bearing the burden of proof to open and close the argument." See Moylan v. Meadow Club,
9 Inc., 979 F.2d 1246, 1251 (7th Cir. 1992). Because both parties bore some aspect of the
10 burden of proof, both parties could theoretically have given rebuttal arguments – an awkward
11 procedure that threatened to confuse the jury. The Court explained this view to the parties.
12 See Lewis Decl. Ex. D (Feb. 9, 2011 Transcript) at 401-02. The Court further explained that
13 "because of the length [and] the time of the trial, which was a day and a half of evidence, that
14 opening statements were full and complete and that closing arguments were being given
15 without any time limit whatsoever and without interruption," rebuttal was not necessary. Id.
16 at 402. The Court continues to hold this view, and finds that this is not a basis for a new
17 trial.

### d.   Limiting Edgerly's Opportunity to Present Evidence

19 Edgerly next argues that the Court improperly limited the evidence he was able to
20 present. See dkt. 310 at 5-6. Specifically, he believes that he should have been able to
21 introduce evidence of: (1) his relationship with a woman who lived at the Housing
22 Cooperative, to show why he did not call her when he got there; (2) "his contact in the
23 community"; (3) "how the event effected [sic] him," to establish that the officers were
24 unreasonable; (4) "the laws that were in question" relating to the unlawful search claim; and
25 (5) the officers' "policy of unlawfully arresting persons . . . under Penal Code 602(L) or if

---

[8] Neither side requested an opportunity to make rebuttal arguments. Although Edgerly asserts in his Motion, "Plaintiff properly indicated that he was seeking a rebuttal by so indicating in his argument," dkt. 310 at 5, the proper procedure would have been to make a request of the Court in advance of closing arguments, not as a part of his argument. The Court explained this to Edgerly: "You didn't ask . . . until it was all over." See Lewis Decl. Ex. D (Feb. 9, 2011 Transcript) at 401.

not a policy, at least a practice of regularly arresting persons in clear violation of settled law." Id. at 5-6.

Evidentiary rulings are within the court's discretion and are reviewed for abuse of discretion. See Navellier v. Sletten, 262 F.3d 923, 942 (9th Cir. 2001). The Court did not abuse this discretion. First, Edgerly did testify about his relationship with the woman at the Cooperative. See dkt. 327 (Feb. 9, 2011 Transcript) at 224:2-225:16. Any testimony that she would have given as to why Edgerly did not call her that day would have been impermissible speculation about his state of mind. More important, although testimony about what Edgerly was doing at the Cooperative provided some context for the incident, it was not really relevant to what the officers knew and why they transferred him to the station instead of releasing him on the spot. Second, Edgerly does not explain why his contact with the community would have been helpful, and the Court cannot imagine its relevance. Third, how the incident affected Edgerly also does not show what the officers knew, why they transferred him to the station, and what kind of search they did there. Though it might have been relevant to damages, the Court bifurcated liability from damages, and the jury never reached the damages issue, as they found in favor of Defendants. Fourth, the Court did not bar all testimony about the applicable laws, only questions seeking legal definitions from lay witnesses. It would have been improper to provide the jury with the legal definition of a strip search outside of the context of a jury instruction.

And fifth, although the Court cannot be certain that it follows Edgerly's argument entirely,[9] the Ninth Circuit held that the officers had probable cause to arrest Edgerly under California Penal Code section 602.8, and so whether the officers had probable cause to arrest him under section 602(l) is somewhat beside the point. Moreover, the Court does not recall that Edgerly had credible evidence of a police policy or practice of unlawfully arresting people under 602(l). Even if such evidence existed, however, Edgerly would not have been

---

[9] Edgerly argues: "The failure to allow this evidence in tend [sic] to establish that the officers were following the law when they arrested persons under 602(l), where the opposite was the case. Their arresting under [sic] Penal Code 602(L) demonstrated a disregard the [sic] rights of persons they arrested, which was compounded by their violation of Penal Code 4030 and lack of knowledge of the requirements thereunder[.]" See dkt. 310 at 6.

13

prejudiced by its exclusion. As there was probable cause to arrest Edgerly under section 602.8, the only remaining question on the unlawful arrest claim was whether any of the exceptions of California Penal Code sections 853.5 and 853.6 applied. The jury found that three did; therefore, even if other people had been unlawfully arrested, there was ample evidence that Edgerly was not.

The Court does not find that Edgerly's inability to introduce any of the evidence he now points to warrants a new trial.

### e. Permitting Two Defense Witnesses to Testify

Edgerly also argues that the Court improperly allowed two defense witnesses to testify, having previously "indicated" that they would not be permitted to do so. See dkt. 310 at 6. This argument is unavailing. As a practical matter, the Court might "indicate" any number of things as a case winds it way toward trial; though parties are free to try to discern the Court's inclinations on one subject or another along the way, they would be well-advised to rely only on the Court's actual holdings. Edgerly provides no citation in the record for any holding that Officer Fabbri and Mr. Cameron would be barred from testifying, and the Court does not believe it ever made such a holding.

In addition, trial management decisions, like allowing certain witnesses to testify, are left to the Court's discretion. See, e.g., General Signal Corp., 66 F.3d at 1507. The Court properly exercised its discretion in allowing both witnesses to testify. Officer Fabbri testified about a prior arrest of Edgerly's in the same area, of which he had informed Officers Goff and Conefrey. See Lewis Decl. Ex. D at 313-19. That testimony was relevant as to those officers' state of mind when they decided to take him back to the station rather than release him at the playground. Mr. Cameron, who also testified in the first trial, testified as to the reasonableness of the officers' decision to take Edgerly back to the station, and as to general policies regarding strip searches. Id. at 313-24. Defendants represent that the testimony of those two witnesses "took less than thirty minutes altogether," see dkt. 329 at 13, and that is also consistent with the Court's recollection.

Even if the Court had improperly allowed the two witnesses to testify, Edgerly has made no showing he was prejudiced by their testimony. Edgerly argues that Cameron was "the more harmful witness as he indicated the search conducted by the officers and there [sic] knowledge of search procedure was proper." See dkt. 310 at 7. But there is a difference between harmful (because the testimony was effective) and prejudicial (because the testimony was improper). Edgerly has only even sought to demonstrate the former. Edgerly's argument that the testimony was particularly harmful because "plaintiff was not allowed to address Penal Code 4030 and that [sic] defendants' practices clearly violated state law," id. also misses the point. Counsel was permitted to inquire of Edgerly himself and of the Defendants and other witnesses exactly what the search at the station entailed. What he was not permitted to do was ask lay witnesses to recite – or himself recite – the legal definition of a strip search under section 4030. The jury's job was to determine whether the search at the station fit within the legal definition of a strip search under section 4030, as provided by the Court. There is no prejudice in that.

The Court does not find that the testimony of Officer Fabbri and Mr. Cameron warrants a new trial.

### f. Special Verdict Form

Finally, Edgerly argues that the special verdict form presented to the jury was "ambiguous and biased and prejudicial." Id. at 7. The Court arrived at the special verdict form after requesting and receiving proposed jury instructions from the parties, and then discussing each proposed question with the parties at length. The Court endeavored to make the verdict form track both the language of the relevant statutes and the evidence in the case, and believes that the form did so.

Edgerly complains that the questions relating to unlawful arrest "were biased as they instructed the jury to issue a verdict for the defendants based on what the officers knew, as opposed as to [sic] what was reasonable." Id. To be clear, the form nowhere "instructed the jury to issue a verdict for the defendants." See id. But the form's unlawful arrest questions did use the subjective rather than the objective. See dkt. 302 (verdict form) ("1. Given what

15

1  you find the officers knew, did they transfer. . . 2.  Given what you find the officers knew,
2  did they believe . . . 3.  Given what you find the officers knew, was it reasonable . . . ?").  It
3  did so because section 853.6(i) also uses the subjective, and not the objective.  See Cal. Penal
4  Code § 853.6(i) ("Whenever any person is arrested by a peace officer for a misdemeanor,
5  that person shall be released . . . unless one of the following is a reason for nonrelease, in
6  which case the arresting officer . . . shall indicate . . . which of the following was a reason for
7  the nonrelease").  The statute does not ask what reasons a reasonable officer might have not
8  to release an individual arrested for a misdemeanor, but what reasons these particular officers
9  had.

10     Edgerly also objects to the wording of Question 1, which asked whether the officers
11  had transferred Edgerly to the station to determine whether he had any (a) outstanding
12  warrants, or (b) stay-away orders, holds, admonishments, or other restrictions.  See dkt. 310
13  at 7.  That question reflected both the language of the statute and the testimony of the
14  officers.  Even assuming it was improper, however, it was only one of three questions about
15  exceptions to the normal cite and release procedures of sections 853.5 and 853.6.  The jury
16  was also asked, in Question 2, whether the officers believed that there was a reasonable
17  likelihood that Edgerly's trespass would continue if they did not transport him, and, in
18  Question 3, whether the officers reasonably believed that anyone's safety would be
19  imminently endangered by releasing Edgerly at the scene.  See dkt. 302 (verdict form).
20  Those questions track the language of section 853.6(i)(7) almost exactly.  See Cal. Penal
21  Code § 853.6(i)(7) ("There was a reasonable likelihood that the offense or offenses would
22  continue or resume, or that the safety of persons or property would be imminently
23  endangered by release of the person arrested.").  Edgerly's only complaint as to those
24  questions is that they are framed in the subjective, rather than informing "the juror as to what
25  information he might reasonably rely upon" or providing "any guide as to conduct [that]
26  would be reasonable."  See dkt. 310 at 8.  Again, there is no "reasonableness" component of
27  the statute, because it does not use an objective test.  Therefore, even if Edgerly was correct
28  that the first question was improper, he has not demonstrated that the second and third

16

questions were improper, and because the jury answered "YES" to all three questions, Edgerly was certainly not prejudiced.

Edgerly subsequently argues, "the greatest harm is that the instruction is so biased in favor of the defendants, it makes anyone arguing that the officers were unreasonable in taking plaintiff into custody seem unreasonable." Id. Edgerly continues, "that unreasonableness would attach to an argument that plaintiff was strip search, [sic] which is verdict question no. 4." Id. The Court does not agree that the special verdict form played any role in making counsel or his arguments seem unreasonable. In addition, this is not a compelling critique of Question 4, which tracked California's definition of a strip search almost exactly. Compare Cal. Penal Code § 4030(c) (defining "strip search" as "a search which requires a person to remove or arrange some or all of his or her clothing so as to permit a visual inspection of the underclothing, breasts, buttocks, or genitalia of such person") with dkt. 302 (verdict form) ("4. Do you find that the officers conducted a search that required Mr. Edgerly to remove or arrange some or all of his clothing so as to permit a visual inspection of his boxer shorts, buttocks, or genitalia?"); see also Lewis Decl. Ex. D at 333.

The Court does not find that the special verdict form warrants a new trial.

### g. Conclusion as to Errors by the Court

Edgerly has not demonstrated that any errors by the Court resulted in a verdict that is contrary to the clear weight of the evidence, based upon false or perjurious evidence, or that constitutes a miscarriage of justice. See Passantino, 212 F.3d at 510 n.15.

### 3. Conclusion as to Motion for a New Trial

For the foregoing reasons, Edgerly is not entitled to a new trial. This Motion is DENIED.

**IT IS SO ORDERED.**

Dated: May 26, 2010

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE